UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| CONEX ENERGY – CANADA, LLC; and CONEX ENERGY, INC., | ) ) ) | CIV. 13-4123-KES |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | ORDER GRANTING |
| | ) | DEFENDANTS' MOTIONS TO |
| MANN ENGINEERING, LTD.; | ) | DISMISS |
| EFFISOLAR ENERGY | ) | |
| CORPORATION; | ) | |
| ALGONQUIN POWER TRUST; | ) | |
| ALGONQUIN POWER & | ) | |
| UTILITIES CORPORATION; and | ) | |
| ALGONQUIN POWER COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

Defendants, Mann Engineering, Ltd., Effisolar Energy Corporation, Algonquin Power Trust (Algonquin PT), Algonquin Power & Utilities Corporation (Algonquin PUC) and Algonquin Power Company (Algonquin PC), move to dismiss the claims against them for lack of personal jurisdiction or alternatively under the basis of forum non conveniens. Plaintiffs, Conex Energy–Canada, LLC, and Conex Energy, Inc., resist defendants' motions. For the following reasons, defendants' motions are granted.

# BACKGROUND

Conex Energy–Canada, LLC is a limited liability company with its principal place of business in Sioux Falls, South Dakota. Conex Energy, Inc., is incorporated with its principal place of business in South Dakota also. Michael J. Young is the indirect sole owner of Conex Energy–Canada, LLC and Conex Energy, Inc., and the president and general counsel for both. Docket 25. Conex Energy–Canada, LLC and Conex Energy, Inc. are both wholly owned subsidiaries of Certus Energy Group, LLC, which is also a South Dakota limited liability company. Conex Energy–Canada, LLC and Conex Energy, Inc. are collectively referred to hereafter as Conex.

Effisolar is incorporated and its principal place of business is in Vancouver, British Columbia. William Xu is the president of Effisolar. Docket 36. Algonquin PT, Algonquin PUC, and Algonquin PC are incorporated under the laws of Ontario, Canada, with their principal place of business in Toronto, Ontario. Algonquin PUC is the parent company of subsidiaries Algonquin PT and Algonquin PC. Mann Engineering is incorporated and its principal place of business is in Toronto, Ontario.

Cornwall Solar Project is located in Ontario, Canada, and is owned by Effisolar. In April 2010, Cornwall obtained a Feed-in Tariff (FIT) contract. A FIT contract provides above-market rates for generation of clean energy. On Aug. 24, 2010, Conex approached Mann Engineering, a facilitator for companies interested in selling FIT contracts, about purchasing a FIT contract. The same day, Mann Engineering and

2

Conex entered into a confidentiality and nondisclosure agreement about a potential joint development of solar facilities in Ontario and "certain locations in the U.S." Docket 36-2. This agreement was sent by email and signed by each party in its respective province or state. Docket 11. The agreement specified that it would be governed by the laws of Ontario. *Id.*

On September 7, 2010, Mann Engineering and Conex entered into a binding letter agreement that was sent via email. The agreement involved two solar energy business transactions within Canada and provided that it was governed by the laws of Ontario. Docket 11. On October 12, 2010, Mann Engineering and Conex entered into an Engineering, Procurement, and Construction agreement (EPC) sent via email. The EPC was related to the contemplation of using Mann Engineering's service for two solar panel projects located in Canada. The EPC also specified that it was governed by the laws of Ontario. Docket 11. All communication at this point was limited to phone and email contacts between Toronto, Ontario, and South Dakota. Between the two projects, in total, Conex alleges that there were 700 emails, 150 phone calls, and 10 packages sent or received between Mann Engineering and Conex. Docket 22.

Ultimately, Mann Engineering connected Conex with Effisolar. The parties agreed that Conex would acquire Cornwall directly through Effisolar by way of a Letter Agreement dated September 7, 2010. The Letter Agreement was sent via email and Effisolar signed the agreement in Canada. Docket 33.

After the agreement was signed, Conex approached Algonquin PT to determine its interest in co-developing the Cornwall Project. Prior to discussions, Algonquin PT signed a confidentiality and nondisclosure agreement on February 22, 2011. The agreement was signed by Algonquin PT in Canada and, according to the terms of the agreement, it was governed by the laws of Ontario. Docket 9. After holding a meeting in Toronto on February 23, 2011, to discuss co-development, Conex emailed Algonquin PT additional requested information from South Dakota to Canada. Additionally, following the meeting there were telephone communications and "numerous e-mail messages" between financial representatives from Conex and agents of Algonquin. Docket 17. Ultimately, Algonquin PT rejected Conex's offer.

Conex, still interested in acquiring Cornwall, continued to negotiate with Effisolar. Correspondence between Conex and Effisolar was limited to telephone, email, and letter communication. Effisolar sent over 800 emails to Conex and Conex sent over 400 emails to Effisolar from the fall of 2010 through September 2011. Docket 36. Effisolar, acting through William Xu, sent at least two overnight packages to Conex in Sioux Falls, South Dakota. Conex, acting through Michael Young, sent at least three packages to Effisolar in Canada. *Id.* Additionally, there were over 100 telephone conversations between Conex and Effisolar. *Id.*

Eventually, Conex and Effisolar entered into a Stock Purchase Agreement (SPA) on June 1, 2011, to transfer controlling interest in Cornwall to Conex. Effisolar

signed the agreement in Canada. Docket 33. As required by the SPA, Conex paid $500,000 as a down payment on its purchase. The SPA stated that it was governed by Ontario law. Docket 36-6.

Under Ontario law, as a condition precedent to obtaining a controlling interest in a company holding a FIT contract, the Ontario Power Company (OPA) must approve the acquisition. On August 11, 2011, OPA gave notice of its denial of Conex's first attempt to get approval. On August 15, 2011, during the period of time that Conex was still trying to obtain OPA approval, the OPA waived its unilateral Pre-Notice to Proceed Termination Right with respect to the Cornwall FIT contract. As a result, Effisolar's FIT contract value increased significantly.

On September 5, 2011, nearly a month after the OPA's first denial, Conex agreed to accept a notice of termination by Effisolar of the SPA provided that Effisolar represent that it had used its best efforts and failed to obtain OPA approval. Subsequently, OPA approval was received, and ultimately Cornwall was sold to Algonquin PC via a share purchase agreement with Effisolar on or before November 27, 2011.

Conex alleges that Effisolar conspired with Mann Engineering and other agents to search for other purchasers, and that Algonquin PT shared confidential information about Cornwall with Algonquin PUC and Algonquin PC, resulting in Algonquin PC's acquisition of Cornwall. Conex alleges that Effisolar did not use its best efforts to

5

obtain OPA approval during its course of dealings with Conex because, if the deal fell

through, Effisolar would be able to make a more profitable deal.

## LEGAL STANDARD

Defendants' motion to dismiss for lack of personal jurisdiction is brought

under Rule 12(b)(2) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12. In a

Rule 12(b)(2) motion, the facts must be viewed in the light most favorable to the party

opposing the motion. *Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211,

1215 (8th Cir. 1977) (citing *Block Indus. v. DHJ Indus, Inc.*, 495 F.2d 256, 259 (8th Cir.

1974)). By pleading sufficient facts, the opposing party must make a prima facie

showing that personal jurisdiction exists and defendants can be subjected to

jurisdiction within the forum state. *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d

588, 591-92 (8th Cir. 2011). The court can consider material outside the pleadings in a

12(b)(2) motion. *Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir. 1998).

## DISCUSSION

To make a prima facie showing that personal jurisdiction exists in a diversity

action, the plaintiff must first establish that the forum state has an applicable long-arm

statute in place. *See* Fed. R. Civ. P. 4(e); *see also Omni Capital Int'l, Ltd. v. Rudolf Wolff &*

*Co.,* 484 U.S. 97, 98 (1987). South Dakota's long-arm statute asserts jurisdiction to the

full extent of the due process clause. SDCL 15-7-2. Consequently, whether the court

has personal jurisdiction depends on "whether the exercise of jurisdiction comports

with the limits imposed by federal due process on the State of [South Dakota]."

*Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).

A plaintiff must establish that assertion of jurisdiction over defendants does not violate the due process clause so as to "not offend 'traditional notions of fair play and substantial justice.' " *J. McIntyre Mach., Ltd. v. Nicastro,* 131 S. Ct. 2780, 2783 (2011) (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). Due process is not violated where a "defendant purposefully establishe[s] minimum contacts within the forum." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 463 (1985). Minimum contacts demonstrate that defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Nicastro*, 131 S. Ct. at 2787-88 *(*quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)). Courts evaluate whether a "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court [t]here." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295 (1980). The inquiry "focuses on the relationship among the defendant, the forum, and the litigation . . . [and] looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."[1] *Walden*, 314 S. Ct. at 1122.

---

[1] The "plaintiff cannot be the only link between the defendant and the forum" *Walden*, 134 S. Ct. at 1122.

More specifically, the Eighth Circuit Court of Appeals has established five factors to be considered in evaluating whether a defendant's conduct or connections with the forum state are sufficient to establish minimum contacts: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." *K-V Pharm.*, 648 F.3d at 592. In evaluating the nature, quality and quantity of the contacts pursuant to the first and second factors above, the Eighth Circuit has held that without more, "phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause." *Porter v. Berall*, 293 F.3d 1073, 1076 (8th Cir. 2002).

## I.  Mann Engineering

Starting with whether Conex has established personal jurisdiction over Mann Engineering, Conex alleges that there were 700 emails, 150 phone calls, and 10 packages sent or received by Conex from Mann Engineering between August 2010 and November 2011. Docket 22. The other alleged contacts are the August 24, September 7, and October 12 agreements. *Id.* Mann Engineering contends that the contacts are not sufficient to establish personal jurisdiction because contact with a forum state via mail, phone, or contract alone does not amount to minimum contacts. Docket 12 (citing *Porter*, 293 F.3d at 1076; also citing *Burger King,* 471 U.S. at 479).

8

Conex responds that when considering all three agreements and the numerous electronic and telephone correspondence together, Mann Engineering's contacts are sufficient to establish the requisite minimum contacts.

When minimum contacts analysis involves a contract, courts should consider all the factors surrounding the contract, such as prior negotiations, the actual course of dealings, the terms of the contract, and contemplated future consequences. *K-V Pharm.*, 648 F.3d at 593. A contract between a plaintiff and defendant is not, in itself, enough to establish minimum contacts. *Id.*

In considering the negotiations and dealings between Mann Engineering and Conex, Conex was the entity that approached Mann Engineering about pursuing a business relationship. Mann Engineering did not purposefully reach out to a South Dakota resident. All negotiations were by phone or mail, and Mann Engineering never had an agent travel to South Dakota. Mann Engineering executed the contracts in Canada. Aside from Conex being in South Dakota, nothing about the negotiations and dealings show Mann Engineering purposefully had contacts with South Dakota.

The terms of the contracts focus almost exclusively on conduct set to take place in Canada. The contracts center on Mann Engineering providing services for projects located in Canada. Mann Engineering is not obligated under the contract to send any products or services into South Dakota. *See id.* at 594 ("A delivery term that requires a nonresident defendant to deliver an item to a plaintiff in the plaintiff's forum state

9

supports the existence of personal jurisdiction."). The August 24 contract
contemplated the possibility of doing business in both Canada and the United States,
but it did not specifically identify South Dakota. Furthermore, all three of the
contracts include a choice of law provision that specifies the agreements are to be
governed by the law of Ontario, Canada. *See id.* (noting that choice of law provisions
should be considered in determining whether personal jurisdiction exists). And while
the contracts did contemplate an ongoing relationship between Mann Engineering and
Conex, that relationship was centered on activities taking place in Canada, not South
Dakota. The only South Dakota connection was the fact that Conex is in South
Dakota. *See Walden*, 134 S. Ct. at 1122 (noting that the contacts must arise from the
defendant's contacts with the forum state itself, not simply contacts with a person
who happens to reside in the forum state). The terms of the contracts and the
expected future dealings between the parties that arose from the contracts do not
establish that Mann Engineering purposefully availed itself of the privilege of
conducting activities within South Dakota.

In *Fastpath, Inc. v. Arbela Tech. Corp.*, ___ F.3d ___, No. 13-2585 (8th Cir.
July 25, 2014), the Eighth Circuit recently analyzed the issue of personal jurisdiction
under facts similar to those found here. In that case, the defendant in question entered
into a contract with an Iowa plaintiff who was asserting that an Iowa federal court had
personal jurisdiction over the non-Iowa defendant. The defendant had no offices or

employees in Iowa and did not conduct business in Iowa. Although the defendant never traveled to Iowa, emails and telephone calls were sent by the plaintiff from Iowa. Furthermore, the contract did not require performance or contemplate future consequences specifically in Iowa, and the alleged breach took place outside of Iowa. Unlike the present case, the defendant in *Fastpath* reached out to the plaintiff to inquire about starting a business relationship, and the contract included an Iowa choice of law provision. The Eighth Circuit held that defendant's contacts were insufficient to establish personal jurisdiction over the defendant because the nature, quality, and quantity of the defendant's contacts with Iowa were insufficient to demonstrate purposeful availment of the forum state.

Similar to *Fastpath*, the business relationship between Mann Engineering and Conex is comprised of telephone calls, emails, letters, and agreements in which the only connection to the forum state was the fact that plaintiffs happened to reside there. This relationship is not one such that the nature, quality, and quantity of Mann Engineering's contacts with South Dakota favors establishing personal jurisdiction. In fact, because the defendant in *Fastpath* reached out to the plaintiff to inquire about starting a business relationship and the contract included an Iowa choice of law provision, the facts in *Fastpath* arguably create a closer call than those here.

Next, the court considers the relationship of the contacts with the cause of action, the forum state's interest in the case, and the convenience of the parties. *K-V*

*Pharm.*, 648 F.3d at 592. Conex asserts claims for breach of contract, intentional interference with contract, intentional interference with business relations, and civil conspiracy. As noted above, Conex's contracts with Mann Engineering are all governed by Canadian law and performance was to take place in Canada. The alleged interference and the alleged conspiracy also took place in Canada. The only South Dakota connection is Conex's presence in South Dakota, which makes the resulting injury take place in South Dakota. But "mere injury to a forum resident is not a sufficient connection to the forum. . . . [A]n injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Walden*, 134 S. Ct. at 1125. Therefore, the cause of action is only remotely, if at all, connected with the contacts.

South Dakota has an interest in this case because South Dakota has both the interest of protecting its residents from torts and interest in protecting its residents from a breach of contract. *See Tiffany Indus., Inc. v. Commercial Grain Bin Co.*, 714 F.2d 799, 802 (8th Cir. 1983) (abrogated on other grounds) (finding that the state has an interest in enforcing contracts); *see also Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 732 (1983) (finding that the state has interest in the health and welfare of its citizens).

Lastly, the court weighs the convenience of the parties. Plaintiffs are located in South Dakota. Defendants are dispersed throughout Canada. Thus, travel will be

12

necessary wherever this case is heard. While modern technology has lessened the burden of travel, there will be some inconvenience wherever this case is litigated. Convenience of the parties weighs in favor of neither party.

After considering all the factors, the court finds that Conex failed to identify sufficient facts to demonstrate that this court has personal jurisdiction over Mann Engineering. Conex did not establish that Mann Engineering had the requisite minimum contacts with South Dakota so that assertion of jurisdiction over Mann Engineering does not offend traditional notions of fair play and substantial justice. Thus, Mann Engineering's motion to dismiss for lack of personal jurisdiction is granted.

## II.   Effisolar

Conex alleges that there were over 800 emails sent by Effisolar to Conex, over 400 emails sent by Conex to Effisolar, 2 overnight packages sent by William Xu (acting on behalf of Effisolar) to Conex in South Dakota, 3 packages sent to Effisolar in Canada from Michael Young (acting on behalf of Conex), and 100 telephone conversations between Conex and Effisolar. Docket 36. The other alleged contact was the September 7, 2010, Letter Agreement and the Stock Purchase Agreement of June 1, 2011. *Id.* Effisolar argues that it has not met the requisite contacts because contact with a forum state via mail, phone, or contract alone does not amount to minimum contacts.

13

In this case, the negotiations and dealings between the two parties were all electronic or by phone. Effisolar did not set foot in South Dakota during the negotiation process, and the contemplated deal between Effisolar and Conex would not have required Effisolar to be present in South Dakota in the future. The acquisition of Cornwall was a one-time event that would complete the contractual duties from either side. Therefore, the Letter Agreement and Stock Purchase Agreement do not establish minimum contacts.

Not only do the contracts not establish minimum contacts, Effisolar's other conduct does not either. Effisolar's interstate conduct is limited to telephone, email, and letter communications. Similarly, Effisolar is not incorporated in South Dakota, its principal place of business is not in South Dakota, it has not physically been present in South Dakota, it does not advertise or solicit business in South Dakota, and it has not made payments to Conex under the contract. Additionally, all documents were signed by Effisolar in Canada. The nature of the present contract is such that Effisolar does not need to have any direct contact with South Dakota to perform its duty under the contract.

Thus, the contacts between Effisolar and South Dakota are not enough to establish minimum contacts. Accordingly, Effisolar's motion to dismiss for lack of personal jurisdiction is granted.

### III.    Algonquin Defendants

Conex alleges that there were numerous email messages and phone conversations between itself and Algonquin PT. Docket 17. Most of the communication Algonquin PT had, however, was with Jon Cody, Conex's previous financial advisor, who was located in New York. Docket 29. Additionally, email messages and telephone conversations on their own are not enough to find minimum contacts. *See Porter*, 293 F.3d at 1076.

Next, Conex alleges that there was a confidentiality and nondisclosure agreement between itself and Algonquin PT. *Id.* As noted above, a contract on its own is not enough to establish minimum contacts. *See Burger King,* 471 U.S. at 479. The court considers the negotiations, course of dealings, and consequences surrounding the contractual relationship. Algonquin PT was approached by Conex to do business with Conex. All negotiations occurred either by phone, email, and mail or at the meeting in Canada. The confidentiality agreement contemplated negotiations, but did not bind the parties to any ongoing relationship. Accordingly, the confidentiality and nondisclosure agreement of February 22, 2011, does not amount to minimum contacts with South Dakota. Additionally, all the contacts totaled do not amount to sufficient minimum contacts. *See Porter,* 293 F.3d at 1075.

Alternatively, relying on *Calder v. Jones*, 465 U.S. 783, 790 (1984), Conex argues that there are minimum contacts between South Dakota and Algonquin PT because

15

the nature of Algonquin PT's conduct in Canada had tortious effects on Conex, which is a South Dakota corporation. *See* Docket 17. In *Walden*, the Supreme Court elaborated on its decision in *Calder* by emphasizing that in *Calder*, "the defendants' intentional tort actually occurred *in* California" because publication to a third party is a necessary element of the libel tort. *Walden*, 134 S. Ct. at 1118 (emphasis added). In contrast, the tort alleged here is conspiracy and interference with a business relationship. While Conex was injured by the alleged torts in South Dakota, both the alleged conspiracy and interference in the business relationship occurred outside South Dakota. Conex is the only link to South Dakota, which the Supreme Court has stated is an insufficient basis for personal jurisdiction. *Walden*, 134 S. Ct. at 1118. Accordingly, Conex has failed to establish facts to support jurisdiction over Algonquin PT.

Likewise, Conex has not alleged facts showing contact between itself and Algonquin PUC or Algonquin PC. Algonquin PUC and Algonquin PC did not enter into any contract or binding agreement with Conex. Neither defendant has any contact with South Dakota because neither does business in South Dakota, has an office in South Dakota, solicits business in South Dakota, or has been physically present in South Dakota.

Conex argues that the court should pierce the corporate veil and hold Algonquin PUC and Algonquin PC liable for the conduct of Algonquin PT. *See, e.g.,*

*Taggart v. Ford Motor Credit Co.,* 462 N.W.2d 493 (S.D. 1990); *see also Baatz v. Arrow Bar,* 452 N.W.2d 138 (S.D. 1990). In evaluating minimum contacts, however, "each defendant's contact with the forum State must be assessed individually." *Calder*, 465 U.S. at 784. And the court already determined personal jurisdiction does not exist over Algonquin PT. So, even if the court did pierce the corporate veil, where there is no jurisdiction over the puppet company, there cannot be jurisdiction over its less involved puppet masters. *See Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.*, 519 F.2d 634, 638 (8th Cir. 1975) (finding jurisdiction over the subsidiary supports jurisdiction over the parent corporation); *see also Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 650 (8th Cir. 2003) (finding that even if there was an "alter ego" issue, the plaintiff failed to prove the nature and quality of the connection was sufficient to support exercise of personal jurisdiction). Thus, Conex has failed to show that Algonquin PC and Algonquin PUC have the minimum amount of contacts with South Dakota needed for personal jurisdiction to exist.

Accordingly, Algonquin PT, Algonquin PC, and Algonquin PUC's motion to dismiss for lack of personal jurisdiction is granted.

## CONCLUSION

Conex failed to provide enough facts for the court to find personal jurisdiction over Mann Engineering, Effisolar, Algonquin PT, Algonquin PUC, and Algonquin PC. Accordingly, it is

ORDERED that Mann Engineering, Ltd.'s motion to dismiss (Docket 10) is granted without prejudice;

IT IS FURTHER ORDERED that Effisolar Energy Corporation's motion to dismiss (Docket 31) is granted without prejudice;

IT IS FURTHER ORDERED that Algonquin Power Trust, Algonquin Power & Utilities, and Algonquin Power Company's motion to dismiss (Docket 8) is granted without prejudice.

Dated July 25, 2014.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

18